DIEDRICH *v.* SWIFT.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—EVIDENCE.
   Upon the trial of an action for the alienation of the affections of plaintiff's husband, the admission of the defendant, his mother, claimed to have been made to plaintiff, that she had sent the husband away because she did not want him to associate with the wife, that she did not consider her son legally married to plaintiff, supported by defendant's testimony on the stand that she opposed the marriage and considered the plaintiff unfit for her family, raised an issue of fact for the jury, and the court properly denied a motion to direct a verdict for the defendant.

2. SAME—DAMAGES.
   Three thousand dollars for loss of support to the plaintiff and her infar⸍ was not unreasonable or excessive damages in a suit for alienation of the affections of her husband.

Error to Iron; Flannigan, J. Submitted November 4, 1913. (Docket No. 65.) Decided March 26, 1914.

Case by Mabel Diedrich against Rosa Swift for alienation of the affections of plaintiff's husband. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cook & Pelham,* for appellant.

*Michael J. Doyle,* for appellee.

BIRD, J. The plaintiff sued the defendant, her mother-in-law, for the alienation of her husband's affections, and recovered a verdict of $3,000, and defendant has brought the case to this court for review. The errors relied upon are:

(1) The refusal of the court to direct a verdict;

(2) the verdict is against the weight of the evidence;
(3) the verdict is excessive.

Plaintiff was married to defendant's son Nicholas Diedrich on January 28, 1911. The marriage was consummated by them, and they were much in each other's company until February 8th following, when Nicholas disappeared. At the time of the marriage plaintiff was in a delicate condition, and in the month of March following she gave birth to a child. There seems to be little or no question but that Nicholas was the father of it. Plaintiff had been employed as a domestic for several years, and after the marriage she continued in such employment, and her husband continued to live with his mother until he went away. It is agreed by counsel that the question as to whether a verdict should have been directed for the defendant must turn upon the construction to be placed upon the following testimony of the parties:

The plaintiff testified:

"I asked her where my husband was. She said nothing; she had sent him out on a homestead, she said, because she didn't want him around town hanging around with me because we were not legally married. * * * She said my child belonged to Escanaba; that I should go there. She said I wasn't decent; that is about everything she said. She said she had sent him out on the homestead; if I wanted to go I could go. * * * She said she would give us a home and $500 to start with had we been married decent, but as it was she would not do anything. She said we were not legally married. She said he was drunk when he married me."

The defendant, who was called for cross-examination, under the statute, testified:

"I was not willing he should marry that girl. I opposed the marriage before it took place. I did not oppose it after. I violently opposed it before it took place. I did not want him to marry her, and told him so repeatedly. I thought she was not fit for my

family. I did oppose their marriage because I thought she was not fit for my family."

1. If the jury believed this testimony, they might reasonably conclude therefrom that defendant questioned, not only the legality of the marriage, but the propriety of it, and, further, that she was responsible for his going away. The testimony as a whole was also open to the inference of an improper motive upon her part in sending him away. Defendant admits that she was violently opposed to the marriage taking place. The testimony of plaintiff, as well as her own, indicates that she had not wholly recovered from that feeling at the time Nicholas went away. While the testimony was somewhat meager, we think it raised a question of fact which was within the province of the jury to decide.

2. We do not think it can be said that the verdict was against the weight of the evidence. If the plaintiff's version of what the defendant said to her was believed by the jury and considered by them in connection with defendant's testimony, there was room for such a finding as they made.

3. It is further argued that the verdict was excessive. If, by the wrongful act of defendant, the plaintiff was deprived of her husband, and therefore of his society and support and the support of her child, the sum fixed by the jury as compensation for this wrong is not so out of proportion to her obvious loss as to justify this court in declaring the verdict excessive.

The judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.